Filed 3/1/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B282911 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA451225) |
| v. | |
| YAZAN ALEDAMAT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Stephen A. Marcus, Judge. Affirmed in part, reversed in part, and remanded.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steve Mercer, Timothy L. O'Hair and Viet H. Nguyen Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Yazan Aledamat (defendant) thrust the exposed blade of a box-cutter toward a man while threatening, "I'll kill you." A jury convicted him of assault with a deadly weapon and making criminal threats. Defendant argues that the assault conviction is invalid because the trial court wrongly instructed the jury that a "deadly weapon" includes an "inherently deadly" weapon when a box cutter is not an inherently deadly weapon as a matter of law. (See *People v. McCoy* (1944) 25 Cal.2d 177, 188 (*McCoy*).) Defendant is correct. Further, because this error placed a legally invalid theory before the jury, we are compelled to reverse this conviction as well as the enhancement for personal use of a deadly weapon, which used the same inapplicable definition of "deadly weapon."

**FACTS AND PROCEDURAL BACKGROUND**

## I.  Facts

In October 2016, defendant approached a woman working at a lunch truck parked in downtown Los Angeles. He told her that he found her attractive and asked her for her phone number; she declined, explaining that she was married with children. On October 22, 2016, defendant approached the woman's husband, who owned the food truck. Defendant asked, "Where's your wife?" Defendant then told the man that he wanted to "fuck" his wife because she was "very hot" and "had a big ass and all of that." When the man turned away to remove his apron, defendant pulled a box cutter out of his pocket and extended the blade; from three or four feet away, defendant thrust the blade at the man at waist level, saying "I'll kill you." Two nearby police officers on horses intervened and arrested defendant.

## II.     Procedural Background

The People charged defendant with (1) assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)),[1] and (2) making a criminal threat (§ 422).  The People further alleged that defendant personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)).  Additionally, the People alleged defendant's 2014 robbery conviction constituted a prior "strike" within the meaning of our Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)) and a prior serious felony (§ 667, subd. (a)(1)).

The matter proceeded to a jury trial.  When instructing the jury on assault with a deadly weapon and on the personal use enhancement, the trial court defined "a deadly weapon" as "any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing or likely to cause death or great bodily injury."

During the prosecutor's initial closing argument, he told the jury that a "box cutter" was a "deadly weapon" because "[i]f [it is] used in a way to cause harm, it would cause harm."  During his rebuttal argument, he asserted that the box-cutter was an "inherently deadly weapon" because "you wouldn't want your children playing with" it.

The jury returned guilty verdicts on both counts, and found the enhancement allegation to be true.  After defendant admitted his prior conviction, the trial court sentenced defendant to 12 years in prison on the criminal threats count, comprised of a base sentence of six years (three years, doubled due to the prior

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

3

strike), plus five years for the prior serious felony, plus one year for the personal use of a deadly weapon. The court imposed a concurrent, six-year sentence on the assault count, comprised of a base sentence of six years (three years, doubled due to the prior strike).

Defendant filed a timely notice of appeal.

## DISCUSSION

For purposes of both assault with a deadly weapon and the enhancement for personal use of a deadly weapon, an object or instrument can be a "deadly weapon" if it is either (1) "inherently deadly" (or "deadly per se" or a "deadly weapon[] as a matter of law") because it is "''dangerous or deadly" to others in the ordinary use for which [it is] designed,'" or (2) "used . . . in a manner" "capable of" and "likely to produce[] death or great bodily injury," taking into account "the nature of the object, the manner in which it is used, and all other facts relevant to the issue." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029 (*Aguilar*); *People v. Graham* (1969) 71 Cal.2d 303, 327-328; *In re Jose R.* (1982) 137 Cal.App.3d 269, 275-276; CALCRIM Nos. 875, 3130)].) A box cutter is a type of knife, and "a knife"—because it is designed to cut things and not people—"is not an inherently dangerous or deadly instrument as a matter of law." (*McCoy*, *supra*, 25 Cal.2d at p. 188.)

Against the backdrop of this law, defendant argues that the trial court erred in instructing the jury that it could find the box cutter to be an "inherently deadly" weapon. Although the instruction the trial court gave is correct in the abstract (*People v. Velasquez* (2012) 211 Cal.App.4th 1170, 1176), the People agree that it was inapplicable here, where the weapon was a box cutter.

4

Employing de novo review (*People v. Manriquez* (2005) 37 Cal.4th 547, 581), we also agree it was error to give this instruction.

The remaining issue is whether this instructional error was prejudicial. This issue turns on whether the error involves the presentation of a *legally* invalid theory to the jury or the presentation of a *factually* invalid theory.

When an appellate court determines that a trial court has presented a jury with two theories supporting a conviction—one *legally* valid and one *legally* invalid—the conviction must be reversed "absent a basis in the record to find that the verdict was actually based on the valid ground." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1122, 1129.) That basis exists only when the jury has "*actually*" relied upon the valid theory (*Aguilar, supra,* 16 Cal.4th at p. 1034; *People v. Swain* (1996) 12 Cal.4th 593, 607); absent such proof, the conviction must be overturned—even if the evidence supporting the valid theory was overwhelming (*People v. Sanchez* (2001) 86 Cal.App.4th 970, 981-982). By contrast, when an appellate court determines that a trial court has presented a jury with two legally valid theories supporting a conviction—one *factually* valid (because it is supported by sufficient evidence) and one *factually* invalid (because it is not)—the conviction must be affirmed unless the "record affirmatively demonstrates . . . that the jury did in fact rely on the [factually] unsupported ground." (*Guiton,* at p. 1129.) These different tests reflect the view that jurors are "well equipped" to sort *factually* valid from invalid theories, but ill equipped to sort *legally* valid from invalid theories. (*Id.* at p. 1126.)

We conclude that the trial court's instruction defining a "dangerous weapon" to include an "inherently dangerous" object entails the presentation of a *legally* (rather than *factually*)

5

invalid theory.  There was no failure of proof—that is, a failure to show through evidence that the box cutter is an "inherently dangerous" weapon.  Instead, a box cutter cannot be an inherently deadly weapon "as a matter of law."  (*McCoy*, *supra*, 25 Cal.2d at p. 188.)  This is functionally indistinguishable from the situation in which a jury is instructed that a particular felony can be a predicate for felony murder when, as a matter of law, it cannot be.  Because this latter situation involves the presentation of a legally invalid theory (*People v. Smith* (1984) 35 Cal.3d 798, 808), so does this case.

Further, we must vacate the assault conviction because there is no basis in the record for concluding that the jury relied on the alternative definition of "deadly weapon" (that is, the definition looking to how a non-inherently dangerous weapon was actually used).  (*People v. Smith* (1998) 62 Cal.App.4th 1233, 1239 [reversal required where appellate court "cannot discern from the record which theory provided the basis for the jury's determination of guilt"].)  Indeed, the prosecutor in his rebuttal argument affirmatively urged the jury to rely on the legally invalid theory when he called the box cutter an "inherently deadly weapon."  And because the trial court used the same definition of "deadly weapon" for both the assault charge and the personal use enhancement, both suffer from the same defect, and both must be vacated.

We recognize that the rules regarding prejudice that we apply in this case are arguably in tension with more recent cases, such as *People v. Merritt* (2017) 2 Cal.5th 819, providing that the failure to instruct on the elements of a crime does not require reversal if those omitted elements are "uncontested" and supported by "overwhelming evidence."  (*Id.* at p. 821-822, 830-

6

832; *Neder v. United States* (1999) 527 U.S. 1, 17-18.) That test would certainly be satisfied here, where defendant never disputed that the box cutter was being used as a deadly weapon and where the evidence of such use is overwhelming. However, the case law we cite in this case is directly on point and remains binding on us. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456.) Any revisiting or reconsideration of this case law is for our Supreme Court, not us.

## DISPOSITION

Defendant's convictions for assault with a deadly weapon, and the one-year enhancement for personal use of a deadly weapon applied to the criminal threats sentence, are vacated. Otherwise, the criminal threats conviction and sentence are affirmed. We remand to the trial court for the People to determine whether to retry the defendant on the vacated crime and enhancement.

## <u>CERTIFIED FOR PUBLICATION.</u>

_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
ASHMANN-GERST