Filed 5/26/21  P. v. Carlos CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEXANDER CARLOS,<br><br>    Defendant and Appellant. | B305614<br><br>Los Angeles County<br>Super. Ct. No. PA093425 |

APPEAL from a judgment of the Superior Court of Los Angeles County, David W. Stuart, Judge. Reversed in part, remanded with instructions.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Attorney General, Scott A. Taryle and Michael R. Johnsen, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant and appellant Alexander Jonathan Carlos of attempted second degree robbery, two counts of second degree robbery, and battery with serious bodily injury. The jury also found true three deadly or dangerous weapon enhancements. The trial court sentenced him to eight years and four months in state prison. On appeal, Carlos raises four arguments: (1) the record contains insufficient evidence to support the jury's true findings on two of the deadly or dangerous weapon enhancements; (2) two of the deadly or dangerous weapon enhancements must be reversed because the trial court instructed the jury with a legally erroneous theory; (3) the attempted robbery conviction must be reversed because trial counsel was prejudicially ineffective in failing to object to inadmissible hearsay; and (4) the sentence imposed on count one was unauthorized and must be corrected. We agree with Carlos's second argument. We reverse the dangerous or deadly weapon enhancements on counts two and three. In all other respects, the judgment is affirmed.

# PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an information charging Carlos with attempted second degree robbery (Pen. Code,[1] §§ 664, 211; count one), two counts of second degree robbery (§ 211; counts two and three), and battery with serious bodily injury (§ 253, subd. (d); count four). The

_____

1    All further undesignated statutory references are to the Penal Code.

2

information further alleged Carlos used a deadly or dangerous weapon in the commission of counts one through three. (§ 12022, subd. (b)(1).)[2]

The jury found Carlos guilty on all counts and found true the weapon enhancements. The trial court sentenced him to eight years and four months in state prison, calculated as follows: (1) a five-year upper term for one of the robberies (count two), plus one year for the weapon enhancement; (2) a consecutive one-year sentence for the other robbery (count three), plus a four-month weapon enhancement; and (3) a consecutive eight-month sentence for the attempted robbery (count one), plus a consecutive four-month weapon enhancement.[3]

Carlos timely appealed.

## FACTUAL BACKGROUND

### I.    Counts one and four

In the early morning of September 8, 2019, Oscar J. was working as a security guard at La Vida Gentlemen's Club in Sun Valley. Around midnight, a man with a t-shirt covering his face approached Oscar J., pointed a crossbow at him, and demanded money. When Oscar J. said he did not have any money, the robber ordered him to "take me where the money is." After they

---

2    The information alleged Carlos sustained two prior prison term convictions under section 667.5, subdivision (b), but the trial court dismissed those allegations under section 1385.

3    The court stayed sentencing on count four under section 654.

entered the club, a struggle ensued over the crossbow. The two men fell to the ground, Oscar J.'s head hit the floor, and the robber landed on top of him. The robber then ran away, leaving the crossbow and t-shirt behind. After the attack, Oscar J. suffered from headaches and pain in his right knee that made it difficult to walk. At the time of trial, he was on medical leave from work because of his knee.

## II. Count two

That same morning, Harpreet S. was working at a 7-Eleven in Pacoima, about three miles from the La Vida club. Around 2:20 a.m., a man walked in, showed Harpreet S. a knife, and demanded money. The man took $236 in cash from two registers, as well as two packs of American Spirit cigarettes, and then left. Surveillance video captured the robbery, and a recording of it was played for the jury.

## III. Count three

Nancy R. was working at a 7-Eleven in Sun Valley the same morning, about three-and-a-half miles from the Pacoima 7-Eleven. At around 2:40 a.m., a man approached her with a knife and demanded money. Nancy R. gave the man cash from two registers and he left. Again, surveillance video captured the robbery, and a recording of it was played for the jury.

## IV. Police investigation

Police examined surveillance video from the three locations. The videos captured the suspect arriving at each location in a small SUV and going into each establishment just before the robberies.

The morning after the crimes, at around 2:30 a.m., officers stopped Carlos because his taillights were not working. He was driving a 1997 Toyota RAV4. There was a butcher knife with an eight-inch blade on the passenger-side floorboard of the car. Because Carlos could not produce identification, had no paperwork for the vehicle, and because of the presence of the knife, the officers detained him. Upon patting him down, they found $207 in his pocket. They also found a pack of American Spirit cigarettes in the car. The officers did not immediately connect Carlos to the robberies, and they ultimately released him after obtaining his home address.

Officers later executed a search warrant at Carlos's apartment. Police retrieved a sweatshirt, pants, and a pair of shoes that appeared similar to what the suspect in the 7-Eleven videos had been wearing. They also retrieved the knife from Carlos's RAV4. They recovered the crossbow, an arrow, and the robber's t-shirt from the La Vida club.

DNA on the t-shirt was later scientifically matched to Carlos. Harpeet S. identified the knife, sweatshirt, pants, and shoes as similar to the robber's. He also identified Carlos as the robber from a six-pack photographic lineup. He was unable to

identify Carlos in court. Nancy R. also identified Carlos as the robber from a photographic lineup.[4]

## DISCUSSION

## I.    Carlos's sufficiency argument

Carlos first argues the record contains insufficient evidence to support the jury's findings that he used a deadly or dangerous weapon in the commission of the two robberies (counts two and three). The crux of Carlos's argument is that because he merely displayed the knife, the evidence was insufficient to prove he used the weapon in a manner likely to cause death or great bodily injury. The Attorney General argues Carlos's display of the knife during the robberies was sufficient to allow the jury to reasonably find the enhancements true. We agree with the Attorney General.

"We review the sufficiency of the evidence to support an enhancement using the same standard we apply to a conviction. [Citation.]" (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) We review the record in the light most favorable to the judgment to determine if there is substantial evidence from which any rational trier of fact could find each element of the crime [or enhancement] beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319 [99 S.Ct. 2781, 61 L.Ed.2d 560] (*Jackson*); *People v. Staten* (2000) 24 Cal.4th 434, 460.) Substantial evidence is evidence that is "reasonable in nature, credible, and of solid value. [Citation.]" (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) In reviewing a sufficiency claim, we

---

4      Carlos did not testify at trial or present witnesses in his defense.

6

"presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.)

Section 12022, subdivision (b)(1) provides for a one-year enhancement when an offender "personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony . . . ."[5] As the jury was correctly instructed, "[i]n order to find 'true' a section 12022(b) allegation, a fact finder must conclude that, during the crime or attempted crime, the defendant himself or herself intentionally displayed in a menacing manner or struck someone with an instrument capable of inflicting great bodily injury or death. [Citations.]" (*People v. Wims* (1995) 10 Cal.4th 293, 302-303 (*Wims*), overruled on other

---

5      The full language of section 12022, subdivision (b)(1) provides: "A person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense." A "deadly or dangerous weapon" for purposes of this enhancement is an object that is either inherently deadly or "'which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.' [Citation]" (*In re B.M.* (2018) 6 Cal.5th 528, 532-533 (*B.M.*); see *People v. Aledamat* (2019) 8 Cal.5th 1, 6, fn. 2 (*Aledamat*) [the same rule regarding inherently and non-inherently deadly weapons that applies to assault under section 245, subdivision (a)(1) applies to section 12022, subdivision (b)(1)].) An inherently deadly weapon is an object that is deadly as a matter of law, by virtue of the ordinary use for which it is designed, but a knife is not such an object. (*Aledamat, supra*, 8 Cal.5th at p. 6.)

7

grounds in *People v. Sengpadychith* (2001) 26 Cal.4th 316, 325-326.)

Applying the above-stated principles, we conclude substantial evidence supports the jury's true findings on the weapon enhancements. As Carlos points out in his opening brief, the victims of the two robberies both testified he displayed a knife when asking for the money. And as the instructions correctly explained, a jury may properly find the enhancement true if the defendant intentionally displayed the weapon in a menacing manner during the commission of the crime. (*Wims*, *supra*, 10 Cal.4th at p. 302.) We therefore reject the contention that the enhancements on counts two and three were not supported by substantial evidence.

We likewise reject Carlos's argument that reversal is required under *B.M.* and *In re Brandon T.* (2011) 191 Cal.App.4th 1491 (*Brandon T.*). In *B.M.*, the juvenile, in an effort to scare her sister, made several downward slicing motions in the area around her sister's blanket-covered legs with an unsharp butter knife. (*B.M.*, *supra*, 6 Cal.5th at p. 531.) Under those circumstances—because the knife was not sharp, the assault was directed only toward the sister's blanket-covered legs, and the juvenile used only moderate pressure—the object was not likely to cause great bodily injury and therefore was not used as a deadly or dangerous weapon. (*Id.* at pp. 536-537.) In *Brandon T.*, the juvenile attempted to cut the victim's face with a small butter knife, but the handle broke off and the knife became ineffective. (*Brandon T.*, *supra*, 191 Cal.App.4th at p. 1494-1495.) The Court of Appeal concluded that, under those circumstances, the knife was not even capable of producing great bodily injury had the juvenile tried, and therefore it did not qualify as a deadly or

8

dangerous weapon. (*Id.* at pp. 1497-1498.) In contrast with the benign objects used in *B.M.* and *Brandon T*, Carlos used a butcher knife with an eight-inch blade.

## II.    Carlos's instructional error argument

Carlos next contends the trial court prejudicially erred by instructing the jury that it could find he used a deadly or dangerous weapon under either of two theories, one of which was legally erroneous. The Attorney General agrees that the court erred, but argues the error was harmless. We agree with Carlos.

Using CALCRIM No. 3145, the trial court instructed the jury that it could find Carlos guilty of using a deadly or dangerous weapon under either of the following two theories: (1) a knife is an inherently deadly weapon; or (2) Carlos used the knife in a manner likely to cause death or great bodily injury.[6] The first theory was legally erroneous because a knife, as a matter of law, is not an inherently deadly weapon. (See *Aledamat*, *supra*, 8 Cal.5th at p. 6.) The trial court therefore erred in instructing the jury on the first theory.

The question is whether the prosecution can sustain its burden of proving the error was harmless beyond a reasonable doubt. (*Aledamat*, *supra*, 8 Cal.5th at pp. 3-4, 9-13, citing *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct.824; 17 L.Ed.705].) We conclude the prosecution cannot sustain its burden. (See *Ibid.*)

---

6    The instruction provided: "A deadly or dangerous weapon is any object, instrument, or weapon that is inherently deadly or dangerous or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."

*People v. Stutelberg* (2018) 29 Cal.App.5th 314 is instructive. The instructional error in that case was the same as the one here. (*Id.* at p. 317.) The Court of Appeal concluded the error was harmless in relation to the weapon enhancement attached to a mayhem conviction, explaining the evidence showed Stutelberg used a box cutter to slice the back of the victim's head from her temple to her hairline. (*Id.* at p. 321.) In relation to an assault with a deadly weapon conviction, however, the court concluded the error was prejudicial. (*Id.* at pp. 322-323.) The court explained that the victim of the assault, unlike the mayhem victim, was not harmed. (*Id.* at p. 322.) The Court of Appeal held: "The jury could reasonably conclude that [Stutelberg's] 'flicking' motion was more of a threat, as opposed to an act likely to cause death or great bodily injury. Under these circumstances, we cannot say that the court's error in instructing the jury regarding an inherently dangerous weapon was harmless beyond a reasonable doubt." (*Ibid.*) The same is true here. The jury could reasonably conclude Carlos's display of the knife in the commission of counts two and three was "more of a threat, as opposed to an act likely to cause death or great bodily injury." (*Ibid.*) "Given the factual uncertainty as to whether [Carlos] used the [knife] in a manner likely to cause [ ] serious physical injury, we cannot say beyond a reasonable doubt that a properly instructed jury would have found [ ] [Carlos] necessarily used the [knife] in a deadly or dangerous manner." (*Id.* at p. 323.) We therefore reverse Carlos's section 12022, subdivision (b)(1) enhancements on counts two and three.

We disagree with the Attorney General's argument that the error was harmless because the prosecution only argued the legally valid theory to the jury (i.e., that Carlos used the knife in

10

a manner likely to cause death or great bodily injury). The prosecution argued the issue to the jury as follows: "We have the knife. It's not like a butter knife, it's a large kitchen knife. We saw that in court. That was displayed to these victims. It doesn't mean that the defendant needs to be pointing it at them, at these victims, or stabbing them. *It means that he is displaying it and that that itself is an object that could cause some damage.* We have that here." (Italics added.) In the above-italicized language, the prosecution suggested to the jury it could find the enhancement true based on the legally invalid theory that a knife is an inherently deadly weapon.

### III. Carlos's ineffective assistance of counsel claim

Carlos next argues his attempted robbery and battery convictions (counts one and four) must be reversed because trial counsel was ineffective in failing to object to prejudicial hearsay that was inadmissible under state law and under the Confrontation Clause. The Attorney General counters that counsel was not ineffective, and even assuming she was, there was no prejudice. We conclude the evidence was admissible, and as a result, we reject the contention that trial counsel was ineffective in failing to object.[7]

---

7 Carlos filed a petition for writ of habeas corpus concurrently with his opening brief raising this same issue (case no. B307801). Because we conclude the evidence was admissible, we dismiss his habeas corpus petition as moot in a separate order.

## A. DNA evidence

A criminalist collected and analyzed the DNA from the La Vida suspect's t-shirt. That analyst's written notes were then sent to criminalist Crisely Abral, who reviewed the notes and wrote a report.[8] Ms. Abral testified that the DNA test results indicated that Carlos's DNA was on the t-shirt. Defense counsel did not object to Ms. Abral's testimony.

## B. Applicable legal principles

### 1. Ineffective assistance of counsel

To establish ineffective assistance of counsel, a criminal defendant must show both that counsel's performance was so deficient that it amounted to a failure to function as the "counsel"

---

8    Ms. Abral explained her lab's "quality control" or "technical review" process as follows:

> [A]t every step, there is another criminalist that also reviews the paperwork, making sure everything, the reagents that we use, everything is [in] proper status. And then after that also when I write a report, I have to review everything at the end, again, after it's been reviewed in every single step, and then after I write my report, somebody else does a technical review, meaning somebody, another criminalist like me, will look at my paperwork and will review all that paperwork, and also do like—do I agree with your findings, then they sign it, and then it goes through a third review, administrative review, which is the final review before it gets released to [the] detective.

guaranteed by the Sixth Amendment, and that counsel's deficiencies were so prejudicial that the defendant was deprived of a fair trial whose result was reliable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 80 L.Ed.2d 674] (*Strickland*); *People v. Pensinger* (1991) 52 Cal.3d 1210, 1252.) An attorney's performance is deficient under *Strickland* if his or her conduct fell below objective standards of reasonableness under prevailing professional norms. (*Strickland*, *supra*, 466 U.S. at pp. 687-688.) Prejudice under *Strickland* is established where there is a reasonable probability that, absent counsel's alleged errors, the result of the proceeding would have been different. (*Id.* at p. 694.) A reasonable probability is a probability sufficient to undermine confidence in the verdict. (*Ibid.*)

### 2. State hearsay law

Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd, (a).)

### 3. Confrontation Clause

Both the United States and the California Constitutions provide that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" (U.S. Const., 6th Amend.; see U.S. Const., 14th Amend.; see Cal. Const., art. I, sec. 15.) "[T]he Sixth Amendment's confrontation right bars the admission at trial of a testimonial

13

out-of-court statement against a [ ] defendant unless the maker of the statement is unavailable [ ] at trial and the defendant had a prior opportunity" to cross-examine that person. (*People v. Lopez* (2013) 55 Cal.4th 569, 580-581 (*Lopez*); see *Crawford v. Washington* (2004) 541 U.S. 36, 59 [124 S.Ct. 1354, 158 L.Ed.2d 177] (*Crawford*).) "To be considered testimonial, the out-of-court statement (1) must have been made with some degree of formality or solemnity[,] and (2) must have a primary purpose that pertains in some fashion to a criminal prosecution." (*People v. Barba* (2013) 215 Cal.App.4th 712, 720-721 (*Barba*); see *Lopez*, *supra*, 55 Cal.4th at pp. 581-582.) "However, the United States Supreme Court has been unable to agree on a precise definition of those requirements. [Citation.]" (*Barba*, *supra*, 215 Cal.App.4th at p. 721; see *Lopez*, *supra*, 55 Cal.4th at pp. 581-582.)

## C. Analysis

Applying the above-stated principles, we conclude Ms. Abral's testimony was admissible. *Barba* is analogous to Carlos's case. In *Barba*, DNA analysist Linda Wong tested hairs discovered on a sweatshirt at the crime scene and concluded they were consistent with Barba's DNA. (*Barba*, *supra*, 215 Cal.App.4th at p. 718.) Wong did not testify at Barba's trial; her supervisor Jennifer Reynolds testified instead. (*Ibid.*) Dr. Reynolds's duties included "performing technical reviews of case folders created by the lab's test analysts, independently drawing conclusions from the test results based on her own expertise and training, and either cosigning the reports or testifying about them in court." (*Ibid.*) Our colleagues in Division Eight held Dr. Reynolds's testimony admissible, explaining: "[I]t makes no sense

14

to exclude evidence of DNA reports if the technicians who conducted the tests do not testify. So long as a qualified expert who is subject to cross-examination conveys an independent opinion about the tests results, then evidence about the DNA tests themselves is admissible." (*Barba*, *supra*, 215 Cal.App.4th at p. 742.) We agree with *Barba* and conclude Ms. Abral's testimony did not violate Carlos's confrontation rights. (See *id.* at p. 743.)

We likewise reject Carlos's contention that Ms. Abral's testimony was inadmissible under state law. As our Supreme Court made clear in *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*), an expert may "still *rely* on hearsay in forming an opinion, and may tell the jury *in general terms* that he did so." (*Id.* at p. 685, italics in original.) That is what happened here. Ms. Abral relied on the analyst's findings in forming her own opinion that the DNA was Carlos's. Her testimony was therefore admissible under *Sanchez*. (See also *People v. Garton* (2018) 4 Cal.5th 485, 505-506 [coroner's testimony was admissible under *Sanchez* even though she did not perform the autopsy herself, but rather exercised her own independent judgment to arrive at her conclusions, which were based on the autopsy report written by and photographs taken by the coroner who performed the autopsy].)

Because the testimony was admissible under state law and the Confrontation Clause, it follows that counsel was not ineffective in failing to object.[9]

---

9    Having concluded trial counsel was not ineffective, we need not address whether the failure to object was prejudicial.

## IV. Carlos's unauthorized sentence argument

Carlos lastly contends his eight-month sentence for attempted robbery (count one) must be modified to a six-month sentence. The Attorney General counters that Carlos's sentence on count one was correct. Carlos makes no mention of this argument in his reply brief. We agree with the Attorney General. Section 213, subdivision (b) states: "Notwithstanding Section 664, attempted robbery in violation of paragraph (2) of subdivision (a) is punishable by imprisonment in the state prison." Section 18, subdivision (a) states that an unspecified punishment of imprisonment for a felony is sixteen months, two years, or three years. The trial court selected count two as the principal term, and under the above-referenced statutes, was correct in imposing an eight-month subordinate term on count one (i.e. one-third the middle term of two years). (See § 1170.1, subd. (a).)

## DISPOSITION

Carlos's section 12022, subdivision (b)(1) enhancements are reversed on counts two and three, and the matter is remanded for further proceedings consistent with the opinion, which may include a retrial on those enhancements. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

WILLHITE, Acting P.J.

COLLINS, J.

17