Filed 9/30/22 P. v. Johnson CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SHIHEIM JOHNSON,<br><br>Defendant and Appellant. | A158418<br><br>(Alameda County Super. Ct. No. 612650) |

Defendant appeals after a jury conviction for murder (Pen. Code[1], § 187), second degree robbery (§ 211), and unlawful possession of a firearm (§ 29820, subd. (b)). He contends the felony murder jury instruction explaining the term "reckless indifference to human life" given at his trial permitted the jury to convict him under an invalid legal theory. He also requests that we review for abuse of discretion the trial court's ruling that it would not disclose a key witness's psychiatric records. We find no merit to defendant's claim that his conviction should be reversed because the jury was permitted to convict him under an invalid legal theory, and we find that the trial court did not err in ruling

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

that the psychiatric records were not to be disclosed. However, we remand the matter for certain clerical corrections and for resentencing on the determinate portion of defendant's sentence due to recent ameliorative amendments to section 1170.

## BACKGROUND

The day before the murder at issue, Joe G. celebrated his birthday with his cousin, Torian H., and his friend Tyron I. Several other people were at his party, some of whom were friends of Joe and some of whom were friends of Tyron. Joe met defendant, a friend of Tyron, at the party.

The morning after the party, Torian and Joe discussed purchasing a gun. Knowing that Tyron had a gun, Joe contacted him so Torian could arrange to buy the gun. Tyron was to come alone to Joe's house.

Tyron arrived with defendant, and the four met inside Joe's house. Joe then told everyone to move outside because his parents would be returning home. Once outside, Torian pulled out money to buy the gun, and defendant and Tyron pulled out guns. Tyron pointed his gun at Torian, and defendant pointed his gun at Joe's head. Tyron told Torian and Joe to give them "everything you got." Torian responded, "I'm not letting this shit happen to me." He struck Tyron with his fists. As they struggled, Joe yelled, "Put the gun down." On direct examination, Joe testified that, several times, defendant yelled, "Shoot that [N-word]." On cross-examination, defense counsel impeached Joe with his preliminary hearing testimony wherein Joe described defendant's statements as "kind of like

2

whispering." Joe acknowledged the statements were not made as part of a conversation between defendant and Tyron, and Tyron did not respond. Tyron fired a shot that killed Torian, and Tyron and defendant ran. Defendant took money and a cell phone from Joe.

The District Attorney filed an information charging defendant with murder (§ 187, subd. (a), count 1); second degree robbery (§ 211, count 2); and two counts of possession of a firearm by a prohibited person (§ 29820, subd. (b), counts 3 & 4). The information also alleged enhancements for personal use of a firearm for counts 1 and 2 (§§ 12022.5, subd. (a), 12022.53, subds. (b), (g)), and a prior strike conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)).

On count 1, the jury found defendant guilty of first degree felony murder, it found true the allegations that defendant was a major participant who acted with reckless indifference and who personally used a firearm, but it found not true that defendant aided and abetted or assisted in the murder with the intent to kill. On count 2, the jury found defendant guilty and found true that he personally used a firearm. On counts 3 and 4, the jury found defendant guilty. At a bench trial, the court found the prior strike allegation to be true.

At sentencing, the court exercised its discretion to strike defendant's prior conviction and the firearm enhancements for counts 1 and 2. Defendant received 25 years to life for count 1, a consecutive determinate term of 5 years for count 2, and the mid-

term of eight months for counts 3 and 4 to run concurrently with the sentence for count 2.

## DISCUSSION

### I.   The "Reckless Indifference" Instruction

#### A.   Additional Background

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) became law (Stats. 2018, ch. 1015, § 3), and, as is relevant here, amended the definition of felony murder in section 189, subdivision (e)(3) to limit liability thereunder to cases where a non-killer defendant was a major participant in the underlying felony who acted with reckless indifference to human life, tracking the requirements for a felony-murder special-circumstance conviction under section 190.2. (§ 189, subd. (e)(3).)[2]   Under section 190.2, felony-murder is one of the 22 special circumstances that determine eligibility for the death penalty or life without possibility of parole in murder cases. (§ 190, subd. (a)(1)–(22).)   For defendants who are non-killers but who may be exposed to liability under the felony-murder special-circumstance provision (§ 190.2, subd. (a)(17)), section 190.2, subdivision (d) imposes an actus reus component—major participation—and a mens rea requirement—reckless

_____

[2] Section 189, subdivision (e)(3) currently states, "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] . . . [¶] [ ] The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

4

indifference to human life. (*In re Scoggins* (2020) 9 Cal.5th 667, 674.)

Prior to the enactment of Senate Bill No. 1437, the California Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), interpreted the "major participant" and "reckless indifference" language in section 190.2, subdivision (d) to incorporate the standards set by *Tison v. Arizona* (1987) 481 U.S. 137, and *Enmund v. Florida* (1982) 458 U.S. 782, regarding the minimum culpability required to impose a sentence of death under the Eighth Amendment. Our Supreme Court derived from *Tison*, *Enmund*, and subsequent cases a series of factors helpful in determining whether the "major participation" and "reckless indifference" components of section 190.2, subdivision (d), have been met (*Banks*, at p. 803; *Clark*, at pp. 618–623[3]). Our high court then applied those factors in reviewing the defendants' substantial evidence challenges to the findings therein. (*Ibid.*)

At his trial in March 2019, following *Clark* and Senate Bill No. 1437, defendant requested a jury instruction defining "reckless indifference" that included the factors discussed in

---

[3] The *Clark* factors are: the defendant's knowledge of weapons, and the use and number of weapons; the defendant's proximity to the crime and opportunity to stop the killing or aid the victim; the duration of the offense, that is, "whether a murder came at the end of a prolonged period of restraint of the victims by defendant"; the defendant's awareness that his or her confederate was likely to kill; and the defendant's efforts to minimize the possibility of violence during the crime. (*Clark*, *supra*, 63 Cal.4th at pp. 618–623.)

*Clark*. Defendant's proposed instruction also stated that participation in an armed robbery, without more, does not constitute engaging in criminal activity that involves a grave risk of death. The trial court elected to give the prosecution's proposed instruction, finding that it tracked the then-operative jury instruction for a reckless indifference finding under section 190.2, subdivision (d) (CALCRIM No. 703), and it was less confusing than the instruction proposed by defendant. The court instructed the jury, "A person *acts with reckless indifference to human life* when he knowingly engages in criminal activity that he knows involves a grave risk of death."[4]

## 1. Analysis

On appeal, defendant argues that, in the absence of his requested admonition that participation in an armed robbery, without more, does not constitute engaging in criminal activity that involves a grave risk of death, the jurors reasonably would have believed that participation in a felony involving a foreseeable risk of death was sufficient to establish reckless indifference. On this basis, he asserts that his jury was

---

[4] In 2020, the Judicial Council Advisory Committee on Criminal Jury Instructions added optional language to CALCRIM Nos. 703 (Special Circumstances: Intent Requirement for Accomplice) and 540B (Felony Murder: First Degree— Coparticipant Allegedly Committed Fatal Act) designed to capture the culpability factors enunciated in *Clark*. (See Bench Note to CALCRIM No. 703 (Apr. 2020 rev.), pp. 449–450, 452; Bench Note to CALCRIM No. 540B (Apr. 2020 rev.), pp. 269, 272.)

permitted to convict him on a legally invalid theory. We are unpersuaded.

To succeed in showing that his jury was permitted to convict him under a legally invalid theory, defendant must demonstrate the instruction conveyed a theory contrary to law. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1125 [an instruction contains a legal error if it includes an incorrect statement of law; a factual error exists if an otherwise valid legal theory is not supported by the facts or evidence in a case]; *People v. Aledamat* (2019) 8 Cal.5th 1, 7–8 [same]; see, e.g., *People v. Stutelberg* (2018) 29 Cal.App.5th 314, 318 [instruction that a box cutter could be an inherently deadly object was an incorrect statement of law]; *People v. Green* (1980) 27 Cal.3d 1, 67 [instruction that asportation element for kidnapping could be satisfied by transporting victim 90 feet was an incorrect statement of law].)

*People v. Estrada* (1995) 11 Cal.4th 568 (*Estrada*) precludes defendant from making the requisite showing. In *Estrada*, our Supreme Court rejected the argument that the trial court had a sua sponte duty to further define "reckless indifference to human life" in section 190.2, subdivision (d) for the jury. (*Estrada*, at pp. 580–581.) The court held that "the generally accepted meaning of the phrase, 'reckless indifference to human life,' in common parlance amply conveys to the jury the requirement of a defendant's subjective awareness of *the grave risk to human life* created by his or her participation in the underlying felony. . . . The phrase therefore does not have a technical meaning peculiar to the law." (*Id*. at p. 578, italics added.) The court further

instructed that, if a request for further instruction on the meaning of the term is made, the trial court should instruct that "reckless indifference to human life" means "knowingly engaging in criminal activities known to carry a grave risk of death." (*Id.* at p. 580.) The instruction in this case was virtually identical to the one *Estrada* approved to further define "reckless indifference to human life." "[T]he reckless indifference to human life standard, especially as defined by the trial court in its instruction, is one that a jury may reasonably be expected to understand." (*People v. Price* (2017) 8 Cal.App.5th 409, 444 [discussing a similar instruction].) The instruction given was thus a correct statement of law.

Nor does defendant show a reasonable likelihood that the jury impermissibly understood the instruction given to mean that, if the target felony is the kind of felony that involves a foreseeable risk of lethal force, the mere act of committing that felony is sufficient to establish reckless indifference. Again, the court instructed that a person acts with reckless indifference to human life when he "knowingly engages in criminal activity that he knows involves a *grave risk of death.*" (Italics added.) Per *Estrada*, a reasonable juror understands that "reckless indifference to human life" means subjective awareness of the grave risk to human life created by the defendant's participation in the felony at issue. (*Estrada, supra,* 11 Cal.4th at p. 578.) It logically follows, then, that a reasonable juror understands the meaning of a "grave risk." And dictionary definitions akin to the one defendant refers to in his briefing and our Supreme Court

8

jurisprudence recognize that participation in conduct involving a "grave risk" of death is commonly understood to occur where the conduct at issue is likely to produce death. (Merriam-Webster Dict. Online <https://www.merriam-webster.com/dictionary/grave> (as of July 12, 2022) [grave as an adjective means "likely to produce great harm or danger, a grave mistake"]; *Banks, supra,* 61 Cal.4th at pp. 800–802 [recognizing that, under section 190.2 and the United States Supreme Court jurisprudence codified therein, those who "subjectively appreciated that their acts were likely to result in the taking of innocent life" may be punished with death].) Given this, we cannot conclude that a reasonable juror would understand an instruction requiring awareness that the defendant's conduct poses a "grave risk" of death to be satisfied where the defendant merely participates in a felony that involves the bare possibility of lethal harm.

Defendant thus fails to persuade us that the instruction in this case presented *a legally invalid theory* because it omitted the *Clark* factors or that such omission would cause a juror to believe participation in armed robbery was alone sufficient to show reckless indifference. *Clark* does not compel "a more explicit jury instruction on particular factors or facts that must be proven to establish" reckless indifference. (*People v. Price, supra,* 8 Cal.App.5th at p. 451.)

Defendant points out that, after his trial, CALCRIM Nos. 703 and 540B were altered to include optional language for the *Clark* factors, and those instructions now include optional

language for both the *Banks* and *Clark* factors.  However, this language remains optional.  In the context of holding that a pre-*Banks* and *Clark* felony-murder special-circumstance finding does not bar a petitioner from stating a prima facie claim for relief under section 1172.6[5], our Supreme Court recently discussed the substantial guidance *Banks* and *Clark* provided for the "major participant" and "reckless indifference" standards governing a felony-murder special-circumstance finding.  (*People v. Strong* (2022) 13 Cal.5th 698, 705–707 (*Strong*).)   At the same time, however, the court stated that "the mandatory [jury] instructions [for a felony-murder special-circumstance finding] did not change in the wake of *Banks* and *Clark*," and it recognized that the additional language instructing on the *Banks* and *Clark* factors in CALCRIM No. 703 remains optional. (*Strong*, at p. 719 & fn. 4.)  Accordingly, we cannot conclude that the instruction deemed acceptable in *Estrada* is a legally incorrect statement of law for reckless indifference under section 190.2, subdivision (d) or section 189, subdivision (e)(3).  As defendant frames his claim of error, the relevant inquiry is whether the jury instruction given contained legal error and whether there was a reasonable likelihood that the jury construed it in a legally impermissible manner.  Under *Estrada*,

---

[5] This provision was originally codified as section 1170.95. In the wake of *People v. Lewis* (2021) 11 Cal.5th 952, the Legislature amended section 1170.95 to adopt certain of *Lewis*'s holdings. (Stats. 2021, ch. 551, § 1, subd. (b).)  The Legislature then renumbered the provision without substantive change, effective June 30, 2022. (Stats. 2022, ch. 58, § 10.)

the instruction was correct as given, and, as previously explained herein, it is not reasonably likely the instruction would be construed as defendant contends.

Even if we were to find error in the trial court's failure to give the *Clark* factors, the circumstances of this case lead us to conclude the error was harmless beyond a reasonable doubt. (See *People v. Merritt* (2017) 2 Cal.5th 819, 831 [finding jury instruction omitting elements of robbery subject to *Chapman* harmless error analysis].)

The *Banks* and *Clark* factors significantly overlap (*Strong*, *supra*, 13 Cal.5th at p. 706), and the jury here was instructed under *Banks* to consider the role defendant played in planning the criminal enterprise that led to death; the role defendant played in supplying or using legal weapons; defendant's awareness of particular dangers posed by the nature of the crime, any weapons used, or past experience or conduct of the other participant; defendant's presence at the scene of the killing in a position to facilitate or prevent the actual murder; whether defendant's own actions or inactions played a particular role in the death; and what defendant did after lethal force was used. (See *Banks*, *supra*, 61 Cal.4th at p. 803.)

The prosecution argued the same evidence supported findings of major participation and reckless indifference. Specifically, the prosecution argued that defendant arrived on the scene with Tyron I. to commit the robbery; he had his own gun; he actually robbed Joe G.; defendant and Tyron took out their guns at the same time, showing planning in advance; there was

11

evidence Tyron and defendant had guns on multiple occasions before the robberies; from a few short feet away, defendant encouraged Tyron to shoot the victim; and defendant fled the scene with Tyron after the crimes. Defendant offered little contradiction, challenging Joe G.'s memory of the statement made right before the shooting in an attempt to negate intent to kill, but otherwise relying heavily on an identity defense.

The jury, having considered the evidence and the *Banks* factors, found that defendant was a major participant. On this record, no reasonable jury that considered the *Banks* factors and made a major participant finding could have failed to find reckless indifference if instructed it could consider the *Clark* factors. (*People v. Merritt*, *supra*, 2 Cal.5th at pp. 831–833.) Any instructional error was therefore harmless.

## 2. Discoverability of Psychiatric Records

Defendant requested that this court independently review a key witness's psychiatric records to determine whether the trial court's decision not to disclose these records to the defense was proper. The People did not oppose this request.

"Evidence Code section 1014 generally privileges confidential communication between a patient and his or her psychotherapist." (*People v. Dworak* (2021) 11 Cal.5th 881, 912 (*Dworak*).) Under *People v. Hammon* (1997) 15 Cal.4th 1117, psychiatric material is generally undiscoverable prior to trial. (*Ibid*.) " 'Parties who challenge on appeal trial court orders withholding information as privileged or otherwise nondiscoverable "must do the best they can with the information

they have, and the appellate court will fill the gap by objectively reviewing the whole record." ' " (*Dworak*, at p. 912.)

We have reviewed the record and agree with the trial court's assessment that the records at issue did not contain any information warranting disclosure. The trial court did not abuse its discretion in rejecting disclosure of these materials. (*Dworak*, *supra*, 11 Cal.5th at p. 912 [reviewing trial court's decision rejecting disclosure of psychological and psychiatric records for abuse of discretion].)

### 3. Remand for Determinate Resentencing and Clerical Corrections

Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567) recently amended section 1170, subdivision (b), to specify that, when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation, (2) proven to a jury (or to a court, if jury is waived) beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction. (Stats. 2021, ch. 731, §§ 1.3, 3, subd. (c), adding § 1170, subd. (b)(1)–(3), by amendment.) Senate Bill No. 567 also added a provision that requires the trial court to impose the low term if the defendant's psychological, physical, or childhood trauma was a contributing factor in the commission of the offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of

justice." (Stats. 2021, ch. 731, §§ 1.3, 3, subd. (c), adding § 1170, subd. (b)(6), by amendment.)[6]

The trial court here imposed a five-year, upper-term sentence for count 2. The parties agree that the above-mentioned ameliorative amendments apply retroactively to this case, and the matter should be remanded for resentencing on the determinate portion of defendant's sentence under current section 1170. We agree. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038–1039 [remanding for resentencing under section 1170 as amended by Senate Bill No. 567].)

Next, as defendant notes, the sentencing minute order incorrectly states that his 1,330 presentence custody credits consist of 665 days of actual custody credits and 665 days of conduct credits, when the trial court's oral pronouncement awarded him 1,330 days of actual custody credits. The People

---

[6] As we read the legislation, Senate Bill No. 567 added subdivision (b)(6) to section 1170. (Stats. 2021, ch. 731, §§ 1.3, 3, subd. (c).) Senate Bill No. 567, Assembly Bill No. 124 (2021–2022 Reg. Sess.), and Assembly Bill No. 1540 (2021–2022 Reg. Sess.) all proposed various changes to the Penal Code, including amendments to section 1170. All three bills were passed by the Legislature in September 2021 and approved by the Governor on October 8, 2021. (See Stats. 2021, ch. 695, § 5 [Assembly Bill No. 124], effective Jan. 1, 2022; Stats. 2021, ch. 719, § 2 [Assembly Bill No. 1540], effective Jan. 1, 2022; Stats. 2021, ch. 731, § 1.3 [Senate Bill No. 567], effective Jan. 1, 2022.) The three bills overlapped in that they proposed similar, but not identical amendments to section 1170. Because Senate Bill No. 567 was the last bill signed by the Governor and has the highest chapter number, its amendments to section 1170 prevail over the amendments to that code section specified in the other two bills. (*People v. Jones* (2022) 79 Cal.App.5th 37, 44, fn. 11.)

agree that the minute order should be modified to accurately reflect the court's oral pronouncement, and we order the correction. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) On remand, the trial court should ensure that the operative abstracts of judgment accurately state the number and nature of presentence credits awarded to defendant.

Finally, the parties also agree that the first pages of the abstracts of judgment reflect an incorrect sentencing hearing date of September 19, 2019, rather than September 10, 2019. We order the trial court to correct this date on the indeterminate abstract of judgment on remand.[7]

## DISPOSITION

Defendant's determinate sentence is vacated, and the matter is remanded to the trial court to resentence defendant on the determinate portion of his sentence under Penal Code section 1170, as amended by Senate Bill No. 567. On remand, the trial court is directed to enter an amended minute order for the sentencing hearing on September 10, 2019, that accurately reflects defendant's presentence credits as of that date, and to ensure that the abstracts of judgment accurately state defendant's presentence credits. The trial court is also directed to issue an amended indeterminate abstract of judgment that accurately reflects the sentencing date as set forth herein, and to send certified copies of the new abstracts of judgment to the

---

[7] Because the trial court must issue a new determinate abstract of judgment after resentencing, we need not order correction to the previously-issued determinate abstract of judgment.

15

Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.


                                        BROWN, J.


WE CONCUR:

POLLAK, P. J.
STREETER, J.


*People v. Johnson* (A158418)