Filed 7/9/21  P. v. Greer CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B305324 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA480624) |
| v. | |
| NICHOLAS SEAN GREER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Craig Richman, Judge.  Affirmed in part, reversed in part, and remanded for further proceedings.

Bess Stiffelman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

A jury convicted appellant Nicholas Sean Greer of making a criminal threat in violation of Penal Code section 422, subdivision (a)[1] and found true that appellant personally used a deadly and dangerous weapon as alleged under section 12022, subdivision (b)(1). The jury acquitted appellant of an assault with a deadly weapon under section 245, subdivision (a)(1). In a bifurcated proceeding to address prior conviction allegations, the trial court found the strike prior alleged under sections 667, subdivision (d) and 1170.12, subdivision (b), as well as the five-year prior under section 667, subdivision (a), to be true. The trial court sentenced appellant to the high term of three years, doubled because of the strike prior, and added one year for the weapon allegation for an aggregate term of seven years. Appellant filed a timely notice of appeal.

On appeal, appellant contends: (1) the trial court erroneously excluded relevant evidence critical to his defense in violation of his state and federal constitutional right to present a defense; (2) the trial court provided the jury with an instruction on the weapon enhancement that contained a misstatement of the law and failed to provide the necessary guidance to determine if the object was a deadly or dangerous weapon; and (3) the trial court's imposition of $510 worth of punitive fines and fees violated his right to due process. We find merit in appellant's second contention and reverse the true finding on the weapon enhancement. The judgment is otherwise affirmed.

---

[1]     Unless otherwise indicated, all further section references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Prosecution's Case*

Appellant and the victim, Edwin Kearney[2] are half brothers.  On August 22, 2019, Edwin was at his parents' one bedroom apartment with his son, Elijah, who was playing a video game when appellant walked in.  According to Edwin, appellant appeared to be "spaced out a little bit."  He wanted to use the shower, and asked Edwin for a clean towel and hair clippers, which Edwin provided.  At this point, the conversation was cordial, but Edwin felt uncomfortable.

After getting out of the bathroom, appellant began to ask Edwin a series of family-related questions, such as whether their mother was at work.  Appellant's tone became aggressive as the conversation continued.  Appellant asked Edwin whether Edwin could make a copy of a key to their mother's apartment.  Edwin told appellant that he did not have the right to do that since it was not his apartment.  Appellant became increasingly upset.  Edwin told his son, Elijah, to get behind him just in case something occurred.

Appellant began cussing at Edwin, calling him a "faggot" and a "bitch-ass nigger."  Edwin asked appellant to calm down – that his son Elijah was there, and to leave in peace. Appellant told Edwin that he was not going anywhere.  Appellant took a fighting stance, made a fist, and made threatening comments about knocking him out and killing him.  Edwin stood up and told appellant he would defend himself.  Appellant went to the

---

[2]     This case involves family members with the same last name: Edwin Kearney, Elijah Price-Kearney, and Alisha Kearney.  To avoid confusion, we will refer to each by their first name.

kitchen to grab a knife from the kitchen drawer. He came back and stood about three feet from Edwin, holding the knife in his right hand at chest level while in a fighting stance. Appellant threatened to kill Edwin multiple times as he swung the knife side to side as if he was toying with Edwin. Edwin felt afraid based on: (1) prior assaultive encounters with appellant, (2) the perceived credibility of the threat, and (3) a desire to protect his son, Elijah, from appellant.

Edwin noticed the front door was ajar. He and Elijah ran out the door to their neighbor's apartment. Once inside, he locked the door to keep appellant out. Appellant followed Edwin and Elijah to their neighbor's apartment and continued his threatening comments from the other side of the door. Edwin called his father and 9-1-1.

In the 9-1-1 call, Edwin told the operator that appellant "tried to stab me."

When Officer Lisa Ruiz of the Los Angeles Police Department arrived at the apartment complex, she saw appellant standing in the threshold of the door to the complex. Appellant was argumentative and did not immediately comply with the officer's commands. Ultimately, he complied and was detained.

Edwin was interviewed by Officer Nodes in Officer Ruiz's presence. Officer Ruiz noted that Edwin was sad, crying, and emotional. Elijah was interviewed by Officer Ruiz separately. Both interviews were recorded. Officer Nodes accompanied Edwin back to the apartment for further investigation. A photograph of the knife was taken, but the knife was not recovered as evidence.

*Appellant's Case*

Appellant testified on his own behalf. He explained he does not stay at his mother's apartment but sleeps there on occasion, keeps his property there, and uses the apartment as his address. On August 22, 2019, appellant went to the apartment to see his family and to take a shower.

After the shower, appellant and Edwin engaged in conversation which escalated into an argument. Appellant could not recall what the argument was about, but said it was not about a key. Edwin was yelling. They were insulting each other. Edwin stated, "There is guns all around the house. I have somebody coming here to do something to you." Appellant did not feel afraid because Edwin "always lies." As the argument continued, Edwin said, "I got something for you. I'll be back." Edwin and Elijah left together.

When appellant attempted to leave the apartment complex, he was met by the officers from the Los Angeles Police Department. The officers handcuffed and placed him in the police vehicle. Appellant testified he never threatened to kill Edwin nor did he confront him with a knife. He further denied having physical confrontations with Edwin in the past.

During the ride from the apartment to the police station, Officer Ryan Cadiz spoke with appellant. The conversation was recorded. Appellant asked Officer Cadiz the reason for his arrest. Officer Cadiz explained that he was being arrested for a "245" and that he "was carrying a knife." Appellant explained that he was "in the kitchen picking up a knife to do something."

5

**DISCUSSION**

## I.  Exclusion of Alisha Kearny's Potential Testimony

Appellant contends the trial court erroneously excluded relevant evidence critical to his defense in violation of his state and federal constitutional rights, requiring reversal of his criminal threat conviction.  We disagree.

## A.  Legal Principles

"In determining the admissibility of evidence, the trial court has broad discretion.  Thus, it is within the court's discretion whether or not to decide admissibility questions under Evidence Code section 402, subdivision (b)[.]  [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 196.)

Under Evidence Code section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Evid. Code, § 352.)

"On appeal, a trial court's decision to admit or not admit evidence, whether made *in limine* or following a hearing pursuant to Evidence Code section 402, is reviewed only for abuse of discretion.  [Citations.]" (*People v. Williams*, *supra,* 16 Cal.4th at p. 197.)  "In contrast to errors having a basis in the federal Constitution, the so-called *Watson* standard applies generally to all manner of trial errors occurring under California law, precluding reversal unless the error resulted in a miscarriage of justice.  [Citation.]" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801.)  "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably

6

probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

Issues involving constitutional rights of the accused are generally reviewed independently. (*People v. Cromer* (2001) 24 Cal.4th 889, 894.) When it relates to the admission or exclusion of evidence, the " '[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense.' [Citations.]" (*People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.) The California Supreme Court has explained "that only evidentiary error amounting to a complete preclusion of a defense violates a defendant's federal constitutional right to present a defense." (*People v. Bacon* (2010) 50 Cal.4th 1082, 1104, fn. 4.)

The standard for assessing prejudice for federal constitutional errors is the "harmless beyond a reasonable doubt" test under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).) "Under *Chapman*, a federal constitutional error is harmless when the reviewing court determines 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' [Citation.] When there is ' "a reasonable possibility" ' that the error might have contributed to the verdict, reversal is required. [Citation.]" (*People v. Aranda* (2012) 55 Cal.4th 342, 367.)

## B.    Relevant Proceedings

After concluding jury selection, the trial court took up several in limine motions, among them, the issue we confront here, whether to admit or exclude Alisha's proposed testimony. Alisha is Edwin's sister who claims she was wrongly accused by

7

Edwin and falsely arrested several months prior to the incident involving appellant.

In framing the issue to the trial court, the prosecutor noted, "Basically the substance of her statement is that back in January that victim in this case called the police on her because she became violent with him at his mother's house. And she was arrested." When asked by the court for its relevance, appellant's trial counsel indicated that Alisha's testimony went to Edwin's "motivation." Appellant's trial counsel explained, "[I]t was a very similar circumstance where he, at the same location, he made similar statement. ¶ That the sister was homeless, on drugs, came over, was violent. He was scared that she was going to stab him. And, you know, she was making threats to him . . . ¶ Like, . . . very identical situation where he made the same allegation and had her arrested. And she basically indicates it was a lie and he's been doing this to different family members . . . ¶ We're indicating that he basically likes to falsely call the police on his siblings to keep them away from the family home."

During the hearing, the prosecutor and defense counsel advised the trial court: (1) a police report was generated in Alisha's arrest, (2) Edwin did not claim Alisha had a knife when she allegedly made the threats, (3) their mother was present during the incident, (4) their mother did not witness the alleged threat but saw that Alisha was "yelling and screaming and punching things and hitting things[,]" (5) Edwin escorted Alisha out of the apartment because of her disrespect for their mother and threats made to him, and (6) once outside, Alisha banged on the door, broke a window, and put a hole in the wall.

The prosecutor noted that if Alisha's testimony was admitted to show Edwin has a character trait of lying to get his

family members in trouble, the prosecutor would need to call witnesses not relevant to the trial, such as their mother, who was present when the incident with Alisha occurred. The prosecutor also mentioned that Alisha's testimony would open the door to rebutting such evidence through presenting character evidence against appellant. The trial court indicated it would make its ruling after Edwin's direct examination.

Once Edwin testified on direct examination, the trial court again took up Alisha's proposed testimony. The prosecutor informed the trial court that the alleged threats happened after Edwin had escorted Alisha into the hallway while the mother remained inside but that the mother would corroborate Alisha's aggressive attitude inside the apartment. Additionally, the prosecutor indicated the police observed some damage in the hallway.

The trial court explained, "Although I would agree that similar faults, complaints, accusations, would be relevant because we have the mother, who would corroborate much of the prior incident. ¶ Except for the threats and then we only have two people who were privy to the threats; that would be Alisha and Edwin Kearney. One says yes the other says no. ¶ As was characterized the other day, it becomes a he said/she said, literally, situation. And therefore a trial within a trial. ¶ So I'm not inclined to allow it to come in at this point in time for that reason. If the similar false accusations could be proved beyond he said/she said, I would consider allowing it in."

After hearing from appellant's trial counsel, the trial court ruled, "I'm not going to allow it to come in. And it would have a tendency under [Evidence Code section] 352 to distract the jury from the issues and take more time than I think it has value for."

9

## C. Analysis

Appellant claims the trial court violated his federal as well as his state constitutional right of due process to present a defense when it excluded Alisha's proposed testimony. We disagree.

At the motion in limine hearing, appellant explained Alisha's proposed testimony was admissible to show Edwin calls the police and falsifies violence and threats that did not occur to get his siblings out of his mother's home. Such evidence falls under Evidence Code section 1103, subdivision (a)(1) which states, "In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character." (Evid. Code, § 1103, subd. (a)(1).)

Appellant's overall defensive strategy was to undermine Edwin and Elijah's credibility. He attempted to do so by: (1) highlighting inconsistencies between Edwin's statement to the police and trial testimony, (2) pointing out inconsistencies between Edwin's and Elijah's testimony, and (3) pointing out the lack of proof that appellant had attacked Edwin three years ago. Excluding Alisha's testimony did not amount to a complete preclusion of appellant's defense strategy and did not implicate appellant's federal constitutional due process right to present a defense.

Appellant cites *People v. Adams* (1988) 198 Cal.App.3d 10, and *People v. Burrell-Hart* (1987) 192 Cal.App.3d 593, as

10

examples where Courts of Appeal have held it was error for the trial court to exclude testimony from a defense witness who made prior false accusations of sexual misconduct against other people. To counter these cases, the Attorney General cites *People v. Bittaker* (1989) 48 Cal.3d 1046 (*Bittaker*) and *People v. Miranda* (2011) 199 Cal.App.4th 1403, to show contrary appellate holdings based on similar facts. Ultimately, the merit of each case must be assessed on its own unique set of facts and the historical record of legal proceedings that accompany it.

As we have determined that the trial court's decision to exclude Alisha's testimony did not implicate appellant's federal constitutional right to due process because it did not completely preclude appellant from presenting his defense strategy, we review the trial court's ruling under the abuse of discretion standard.

"The abuse of discretion standard is used in many . . . contexts and reflects the trial court's superior ability to consider and weigh the myriad factors that are relevant to the decision at hand. A trial court will not be found to have abused its discretion unless it 'exercised its discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice.' [Citation.]" (*People v. Roldan* (2005) 35 Cal.4th 646, 688, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390.)

As argued by appellant's trial counsel, Alisha's proposed testimony was material to show Edwin's character trait for falsifying police reports against family members.[3] As the trial

---

[3] Appellant claims the trial court misunderstood the probative value of Alisha's proposed testimony. According to appellant, "[t]he jury need not determine who was telling the

court properly assessed, the probative value of Alisha's testimony hinged on appellant's ability to prove that Edwin lied when he called the police. Put differently, "[t]he value of the evidence as impeachment depends upon proof that the prior [incident was] false." (*Bittaker, supra,* 48 Cal.3d at p. 1097.) As such, the trial court's focus on appellant's ability to prove falsehood was proper.

The trial court's analysis of Alisha's proposed testimony as a "he said/she said" scenario that would turn into a "trial within a trial" shows it believed the testimony lacked strength on proving falsity. The trial court was advised that Alisha's mother, if called as a witness by the prosecution, would, in all likelihood, corroborate Edwin's version of events inside the apartment. Furthermore, the police report indicated officers observed physical damage in the hallway suggesting, if an officer was called, he or she would probably corroborate Edwin's version that Alisha was acting out in the hallway by hitting and banging on

---

truth about the prior allegation since it demonstrated the brother's knowledge of the consequences of the allegation, and how it would aid in his efforts to exclude the siblings from the family home, which was the motive, according to appellant, for Edwin to fabricate." We do not read the transcript in the same way. While appellant's trial counsel talked about "motivation," she concluded that the probative value of Alisha's testimony was to show Edwin "likes to falsely call the police on his siblings to keep them away from the family home." Despite having the opportunity to do so in the hearing, trial counsel did not argue a theory of admissibility separate from falsity. As a fundamental rule of appellate procedure, "a reviewing court does not consider arguments or theories that could have been but were not raised below[.]" (*In re Campbell* (2017) 11 Cal.App.5th 742, 756.)

things.  These facts, when combined, weakened the probative value of Alisha's proposed testimony.

Possessing this knowledge, the trial court weighed the probative value of Alisha's testimony against two factors enumerated under Evidence Code section 352 – undue consumption of time and confusion of issues.  While the trial court did not state on the record that it believed the probative value was substantially outweighed by undue consumption of time and confusion of issues, it did not need to do so.  "In ruling on an Evidence Code section 352 [motion], the trial court need neither expressly weigh prejudicial effect against probative value nor expressly announce compliance with the statute.  [Citation.]" (*People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1080.)  The trial court's ruling was neither arbitrary nor capricious.  It was not an abuse of discretion.

Although we hold the trial court did not abuse its discretion, if error had occurred, there was no reasonable possibility of a more favorable result.  (*Watson, supra*, 46 Cal.2d at p. 836.)

The evidence adduced at trial shows Edwin and Elijah's testimony concerning appellant's actions were generally consistent.  According to Officer Ruiz, Edwin and Elijah were separated when they gave their statements to the police.  Their statements were recorded and to a large extent corroborated one another's.  Officer Ruiz also testified that Edwin was emotional – he was sad and crying – further bolstering Edwin's credibility.

Appellant contends the jury's acquittal on the assault with a deadly weapon charge shows this was a close credibility call and that Alisha's testimony would have tipped the scale in appellant's favor.  We disagree.

13

Our review of the record shows appellant's trial counsel's closing argument focused on Edwin's testimony about appellant's actions with the knife when the assault allegedly occurred. Appellant's trial counsel argued Edwin's description of what happened was not an assault since assault requires the ability to apply force as an element. Based on Edwin's testimony, appellant's trial counsel argued the actions described were consistent with brandishing to scare Edwin. During the trial, Edwin testified that appellant got to about three feet away from him with the knife, and that, he was "swinging a little bit left to right toying with me[.]" We see this not so much as a partial rejection of Edwin's credibility, but rather, as a verdict consistent with Edwin's own testimony and the appropriate trial tactics of appellant's trial counsel to point out the weakness in the prosecution's evidence. As such, from our review of the totality of the record, there was no reasonable probability of a more favorable result on the criminal threat conviction.

## II.    Instructional Error on the Weapon Enhancement

Appellant contends the trial court's instruction on the weapon enhancement contained a misstatement of law and failed to provide the necessary guidance to determine if the object was a deadly or dangerous weapon, thus requiring reversal of the enhancement. We agree.

## A.    Legal Principles

"It is settled that in criminal cases, even when not requested, the court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the

14

case.  [Citations.]"  (*People v. Wilson* (1967) 66 Cal.2d 749, 759, fn. omitted.)

In *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), the United States Supreme Court held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  (*Id.* at p. 490.)

Picking up where *Apprendi* left off, the California Supreme Court explained that, "[t]he [*Apprendi*] court treated a sentence enhancement as the functional equivalent of a crime.  [Citation].  To put it more accurately, *Apprendi* treated the crime together with its sentence enhancement as the 'functional equivalent' of a single 'greater' crime.  [Citation.]"  (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 326.)  As such, a criminal defendant's right to a jury trial on a charged crime extends to enhancements.  Trial courts have a sua sponte duty to instruct on charged weapon enhancements.

California law categorizes a deadly or a dangerous weapon in two ways:  (1) objects deemed "inherently deadly" as a matter of law; and (2) objects that are determined to be deadly or dangerous based on the manner of use.  (*People v. Stutelberg* (2018) 29 Cal.App.5th 314, 317-318.)  " 'Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such.  [Citation.]' "  (*People v. Aledamat* (2019) 8 Cal.5th 1, 6 (*Aledamat*).)  "Because a knife can be, and usually is, used for innocent purposes, it is not among the few objects that are inherently deadly weapons."  (*Ibid.*)

When an object is not "inherently deadly" as a matter of law, but the trial court nonetheless instructs the jury with both

theories to determine whether the object is deadly or dangerous – "inherently deadly" or based on usage – the trial court commits error. (*Aledamat, supra*, 8 Cal.5th at p. 7.) Such errors are called "alternative-theory errors." (*Id*. at p. 9.)

If a trial court instructs the jury on what constitutes an "inherently deadly" weapon, the error is factual in nature. On the contrary, the trial court commits a legal error when, having provided the two alternate theories, it fails to further define what the law determines to be an "inherently deadly" object. (*Aledamat, supra*, 8 Cal.5th at p. 8.)

"A legal error is an incorrect statement of law, whereas a factual error is an otherwise valid legal theory that is not supported by the facts or evidence in a case. [Citation.] Between the two, legal error requires a more stringent standard for prejudice, for jurors are presumed to be less able to identify and ignore an incorrect statement of law due to their lack of formal legal training. [Citation.] Factual errors, on the other hand, are less likely to be prejudicial because jurors are generally able to evaluate the facts of a case and ignore factually inapplicable theories. [Citation.]" (*People v. Stutelberg, supra*, 29 Cal.App.5th at p. 318.)

As to prejudice, legal errors are subject to the *Chapman* standard of review. (*Aledamat, supra*, 8 Cal.5th at p. 13.) "The reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*Ibid*.)

## B.    Legal Proceedings

On the weapon enhancement, the trial court instructed the jury with CALCRIM No. 3145:

"If you find the defendant guilty of criminal threats, you must then decide whether the People have proved the additional allegation that the defendant personally used a deadly or dangerous weapon during the commission of that crime. [¶] A *deadly or dangerous weapon* is any object, instrument, or weapon that is *inherently deadly or dangerous or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury*. [¶] *Great bodily injury* means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. [¶] Someone *personally uses* a deadly or dangerous weapon if he or she intentionally displays the weapon in a menacing manner. [¶] The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved." (Second italics added.)

In providing this instruction to the jury, the trial court deleted the following additional bracketed paragraphs on the definition of what constitutes an "inherently deadly" object and the factors the jury may consider in determining whether an object is deadly or dangerous based on usage:

"[An object is *inherently deadly* if it is deadly or dangerous in the ordinary use for which it was designed.]

"[In deciding whether an object is a deadly weapon, consider all the surrounding circumstances, including when and where the object was possessed[,] [and] [where the person who possessed the object was going][,] [whether the object was changed from its standard form][,] [and any

17

other evidence that indicates whether the object would be used for a dangerous, rather than a harmless, purpose.]]"  (CALCRIM No. 3145.)

## C.  Analysis

Based on the manner CALCRIM No. 3145 was given to the jury, the Attorney General concedes that the trial court committed error.  However, he contends the error was harmless beyond a reasonable doubt.  We agree the error is legal in nature because the trial court failed to instruct the jury on the definition of an "inherently deadly" weapon triggering the *Chapman* standard of review.

We thus address whether the legal error is harmless beyond a reasonable doubt.  Stated differently, we are required to reverse if a juror – based on the manner in which the jury was instructed – voted to find the weapon allegation true because he or she believed the knife to be an "inherently deadly" object.

In *Aledamat*, the weapon allegation under section 12022, subdivision (b) was a box cutter, not a knife.  (*Aledamat, supra,* 8 Cal.5th at p. 6.)  While not dispositive, a box cutter, by its own name, suggests it is not an object manufactured to cut human beings.  As such, a reasonable juror would, it seems to us, look to consider how the box cutter was used to determine whether the item was a deadly or a dangerous weapon.

This is more difficult to say with a knife.  Just as the trial court and counsel appear to have failed to identify the issue, we find it hard to fathom that a juror would not have entertained a similar assumption about the dangerous and deadly nature of a knife.  Indeed, here, the trial court deleted the portion of CALCRIM No. 3145 that provides jurors with guidance to determine whether the object was used in a deadly or dangerous

18

way. The common assumption that a knife is a deadly instrument, without considering the manner of use, is easily arrived at without much reflection.

In *Aledamat*, one of the ways in which the court determined that the error was harmless was by looking at the verdict the jury rendered. (*Aledamat, supra*, 8 Cal.5th at p. 15.) Just as in the instant case, the defendant in *Aledamat* was charged with both an assault with a deadly weapon in violation of section 245, subdivision (a)(1) and making a criminal threat in violation of section 422, subdivision (a). On the section 422 count, the defendant was also charged with a personal use of a deadly or dangerous weapon in violation of section 12022, subdivision (b). The jury convicted the defendant on both counts and found the weapon allegation true. (*Aledamat,* at p. 5.)

In this approach, "[t]he reviewing court examines what the jury necessarily did find and asks whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well. [Citation.] Here, under the [assault with a deadly weapon] instructions, the jury necessarily found the following: (1) defendant did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force; (2) defendant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (3) defendant had the present ability to apply force with a deadly weapon to a person." (*Aledamat, supra*, 8 Cal.5th at p. 15.)

The *Aledamat* court further reasoned that, while it was possible the jury could have determined the box cutter to be an "inherently deadly" object in the colloquial sense, because of the

19

jury's finding on the assault charge, they necessarily would have considered that the defendant used it as a weapon. (*Aledamat, supra*, 8 Cal.5th at p. 15.)

In the instant case, the direct opposite occurred. The jury acquitted appellant on the assault with a deadly weapon charge. We therefore cannot conclude, as in *Aledamat*, that the jury necessarily would have considered that the knife was used as a weapon rather than simply finding that the knife was an "inherently dangerous" object in a colloquial sense. For the foregoing reasons, we hold the instructional error was not harmless beyond a reasonable doubt.

## III.   Punitive Fine and Fees

Appellant contends the imposition of $510 worth of punitive fine and fees at sentencing violated his right to due process. We disagree.

## A.   Relevant Proceedings

The jury rendered its verdict finding appellant guilty of making a criminal threat and not guilty of assault with a deadly weapon on November 27, 2019, after the publication of *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) on January 8, 2019. The trial court rendered its judgment on February 26, 2020, and sentenced appellant to a seven-year prison term. At that time, the trial court imposed a total of $370 in fines and fees: (1) a punitive restitution fine in the mandatory minimum amount of $300 pursuant to section 1202.4, subdivision (b); (2) a parole revocation restitution fine in the amount of $300 pursuant to section 1202.45, which was stayed pending the completion of parole; (3) a criminal conviction assessment in the amount of $30 pursuant to Government Code section 70373; and (4) a court

20

operations assessment in the amount of $40 pursuant to section 1465.8, subdivision (a)(1).

When the trial court imposed the punitive fine and the two assessments, appellant's trial counsel did not object. Thereafter, appellate counsel sent a letter pursuant to section 1237.2 (dated October 15, 2020) to the trial court, asking that the fine and fees be stayed pursuant to the holding in *Dueñas*. In the letter, appellate counsel acknowledged that trial counsel had not objected at the time the fine and fees were imposed.

## B.    Analysis

### 1.    Section 1237.2 Issue

Appellant concedes his trial counsel failed to object to the imposition of the fine and fees at the time of sentencing. Despite this, he claims the issue is not forfeited because the trial court considered appellate counsel's letter request to stay the fine and fees pursuant to section 1237.2.

> "Section 1237.2 states:
>
> An appeal may not be taken by the defendant from a judgment of conviction on the ground of an error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction in the trial court, which may be made informally in writing. The trial court retains jurisdiction after a notice of appeal has been filed to correct any error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs upon the defendant's request for

21

correction. This section only applies in cases where the erroneous imposition or calculation of fines, penalty assessments, surcharges, fees, or costs are the sole issue on appeal."

Section 1237.2 makes clear its provisions apply "in cases where the erroneous imposition or calculation of fines, penalty assessments, surcharges, fees, or costs are the sole issue on appeal." (§ 1237.2.) The Legislature enacted this section to fix correctable errors without the need to file a formal appeal – to promote "judicial economy." (*People v. Torres* (2020) 44 Cal.App.5th 1081, 1086.)

"Generally, once a judgment is rendered and execution of the sentence has begun, the trial court does not have jurisdiction to vacate or modify the sentence. [Citations.] If the trial court does not have jurisdiction to rule on a motion to vacate or modify a sentence, an order denying such a motion is nonappealable, and any appeal from such an order must be dismissed. [Citations.] . . . . [¶] There are exceptions to the general rule. A court may recall a sentence and resentence a defendant under certain circumstances within 120 days of the defendant's custody commitment. (§ 1170, subd. (d)(1).) Resentencing is also authorized under the circumstances specified in sections 1170.126, 1170.18, and 1170.95. Courts may correct computational and clerical errors at any time. [Citation.] Unauthorized sentences and ' " 'obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings' " ' are correctable at any time. [Citations.]" (*People v. Torres, supra*, 44 Cal.App.5th at pp. 1084-1085.)

*People v. Jinkins* (2020) 58 Cal.App.5th 707 (*Jinkins*) is instructive. In *Jinkins*, the appellant there entered a plea for 17 years on an assault by means of force likely to produce great bodily injury in violation of section 245, subdivision (a)(4) and admitted two special allegations: personally inflicting great bodily injury pursuant to section 12022.7, subdivision (a), and committing the crime to benefit a gang pursuant to section 186.22, subdivision (b). At sentencing, the trial court imposed a punitive restitution fine under section 1202.4, subdivision (b) in the amount of $5,100. At the time of sentencing, the appellant did not object. (*Jinkins,* at pp. 709-710.) Several years later after *Dueñas* was published, the appellant filed a motion in superior court to have his restitution fine reduced to $200, the amount he claimed was the statutory minimum. (*Id.* at p. 710.)

The appellant argued "that the sentence was unauthorized under *Dueñas* and section 1237 as an 'order made after judgment affecting the substantial rights of the party,' and therefore excepted from the general rule that the trial court lacked jurisdiction to rule on his motion, which would require that the appeal be dismissed." (*Jinkins, supra,* 58 Cal.App.5th at p. 712.)

The *Jinkins* court disagreed and explained, " ' "The unauthorized sentence exception is 'a narrow exception' to the waiver doctrine that normally applies where the sentence 'could not lawfully be imposed under any circumstance in the particular case,' for example, 'where the court violates mandatory provisions governing the length of confinement.' [Citations.] The class of nonwaivable claims includes 'obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings.' " [Citation.]' [Citation.]" (*Jinkins, supra,* 58 Cal.App.5th at pp. 712-713.) The

23

*Jinkins* court held that "[the appellant's] contention is based on factual arguments concerning his ability to pay, and does not fall within the exception carved out for unauthorized sentences. The trial court therefore lacked discretion to review the motion." (*Id.* at p. 713.)

As in *Jinkins*, the trial court here lacked discretion to review counsel's letter. First, the trial court imposed judgment on February 26, 2020. A notice of appeal was filed on the following day. The 120-day time period for the trial court to recall its own sentence pursuant to section 1170, subdivision (d) to conduct resentencing passed on June 25, 2020. Second, section 1237.2 is inapplicable since the imposition of the fines and fees is not the sole issue raised on this appeal. Third, as noted in *Jinkins*, the alleged error here does not fall under the unauthorized sentence exception since the request is not correctible without referring to factual findings. Since the trial court lacked jurisdiction to change its sentence, the denial of the letter request was a legal nullity.[4]

### 2. Forfeiture

In *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155, we previously held that the failure of trial counsel to object

---

[4]     *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472–1473 explains, "[b]ecause an appeal divests the trial court of subject matter jurisdiction, the court lacks jurisdiction to vacate the judgment or make any order affecting it. [Citations.] Thus, action by the trial court while an appeal is pending is null and void. [Citations.] Indeed, '[s]o complete is this loss of jurisdiction effected by the appeal that even the consent of the parties has been held ineffective to reinvest the trial court with jurisdiction over the subject matter of the appeal and that an order based upon such consent would be a nullity.' [Citation.]"

to the imposition of the restitution fine under section 1202.4, subdivision (b), and the assessments under section 1465.8 and Government Code section 70373 forfeits the claim on appeal. "The concept of forfeiture for failure to raise ability to pay fines, fees or assessments is well established in our case law prior to *Dueñas*. Some of the cases include *People v. Aguilar* (2015) 60 Cal.4th 862, 864 [182 Cal.Rptr.3d 137, 340 P.3d 366]; *People v. Trujillo* (2015) 60 Cal.4th 850, 853-854 [182 Cal.Rptr.3d 143, 340 P.3d 371]; *People v. Nelson* (2011) 51 Cal.4th 198, 227 [120 Cal.Rptr.3d 406, 246 P.3d 301]; and *People v. Avila* (2009) 46 Cal.4th 680, 729 [94 Cal.Rptr.3d 699, 208 P.3d 634]." (*People v. Keene* (2019) 43 Cal.App.5th 861, 864.) Here, since appellant's trial counsel failed to object, the contention on the imposition of the punitive fine and the two assessments is forfeited.

## DISPOSITION

The true finding on the weapon enhancement pursuant to section 12022, subdivision (b) is reversed. The matter is remanded to the trial court for proceedings consistent with this opinion. The judgment is otherwise affirmed.


OHTA, J.[*]

We concur:


GRIMES, Acting P. J.                WILEY, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25